HAZARD EXPRESS, etc., Appellants,

v.

COMBS MOTOR FREIGHT, INC., et al.,
Appellees.  File No. F–107–62.

HAZARD EXPRESS, etc., et al., Appellants,

v.

COMBS MOTOR FREIGHT, INC., et al.,
Appellees.  File No. F–108–62.

Court of Appeals of Kentucky.

Nov. 22, 1963.

Fred F. Bradley, McChesney & Kinker, Frankfort, for appellant.

Herbert Liebman, George Catlett and Ben Combs, Asst. Atty. Gen., Frankfort, for appellee.

CULLEN, Commissioner.

In March 1960, Hazard Express (Tom Johnson d/b/a), which for a number of years has operated a common carrier truck service between Lexington and various points in eastern Kentucky, made application to the Department of Motor Transportation (hereinafter D.M.T.) for an extension of its certificate which would authorize operations between Louisville and the eastern Kentucky points. Combs Motor Freight, Inc. (which held no existing certificates) protested the Hazard Express application and also filed, in April 1960, its own application for a certificate authorizing the same operating authority as held and sought by Hazard Express. D.M.T. denied the application of Hazard Express and granted that of Combs Motor Freight. On appeals to the circuit court judgments were entered upholding the D.M.T. orders. Hazard Express has appealed to this court from both judgments and is joined in the appeal from the judgment upholding the granting of the Combs application by two other carriers who were somewhat nominal protestants of that application.

(In 1957 D.M.T. had granted to Paul Combs, an individual [he is now the principal owner of Combs Motor Freight, Inc.] a certificate substantially identical with that granted in the present proceeding to Combs Motor Freight. A circuit court judgment setting aside that order was affirmed by this court in Combs v. Johnson, Ky., 331 S.W. 2d 730. However, the evidence and issues in the instant proceeding are so different that the decision in that case does not have a controlling effect here. Pending the appeals in the former case Combs operated under the certificate. In March 1960 the certificate was revoked by D.M.T. pursuant to the mandate of this court in Combs v. Johnson, supra.)

D.M.T. denied the Hazard Express application on the grounds that (1) Hazard

Express was financially unfit; (2) it was otherwise unfit because it had committed serious violations of the statutes and of the regulations of D.M.T. in operations under its existing certificate; (3) it had failed to prove a necessity for additional service between Louisville and all of the designated points in eastern Kentucky; and (4) public convenience and the public interest would not be served by granting the application because Hazard Express had consistently rendered inadequate service under its existing certificate. Hazard Express maintains that none of these findings are supported by the evidence.

Actually there was no real dispute as to the necessity for additional service between Louisville and the eastern Kentucky points because both Hazard Express and Combs Motor Freight submitted proof of the need for such service. D.M.T. found on the Combs application that there was a necessity for the service, so we think that the finding, on the Hazard Express application, that the applicant had not proved the necessity, should not be accorded any weight by us in determining whether the Hazard Express application properly was denied.

■ As concerns the finding of financial unfitness, it is our opinion that the evidence of such unfitness was not sufficient, standing alone, to warrant the denial of the application. While there was evidence that Hazard Express had liabilities substantially equal to or exceeding its assets, and had shown a profit in only one year during its period of operation, the facts remain that it had managed to continue in business for 15 years and had sufficient credit to enable the purchase of such new equipment as would be required for the Louisville service. We believe the financial condition of Hazard Express was not alone a sufficient basis for denial of the application, but could be considered as a factor in weighing the overall fitness of the applicant to render the proposed service.

■ With regard to general fitness, we think the evidence would warrant the con-clusion that Hazard Express had engaged in a consistent practice of under-licensing its trucks, by purchasing registration tags from the county clerk for weights much lower than the trucks would normally carry and much lower than the weights for which weight tags were obtained from D.M.T. Also, that Hazard Express frequently had deferred obtaining weight tags for trucks until along in May, when a reduced rate could be obtained, although the same trucks had been licensed with the county clerk in January. Further, that Hazard Express on three recent occasions had been guilty of operating trucks or trailers without proper registration. The evidence created a strong inference that Hazard Express was pursuing a policy of evasion of taxes on its trucks. In our opinion this evidence justified D.M.T. in finding against Hazard Express on the issue of general fitness.

■ On the matter of public convenience and public interest, there was evidence that on a substantial percentage of shipments from Lexington to eastern Kentucky points delivery was not made until the third, fourth, fifth or sixth day after Hazard Express had received the shipment in Lexington. We think the evidence warranted the finding that the existing service failed to meet a proper standard of adequacy, so as to indicate the inability or unwillingness of Hazard Express to render in the proposed new operation a quality of service conforming with public convenience and interests.

■ Considering, cumulatively, the evidence of general unfitness, frail financial status, and inadequate existing service, it is our conclusion that the evidence sustains the order of D.M.T. denying the application of Hazard Express.

We now consider the order granting the application of Combs Motor Freight.

■ The appellants' first contention is that "dual operations" contrary to the policy of the motor transportation law would be permitted by the granting of the common

carrier certificate to Combs Motor Freight, because Paul Combs individually holds a *contract carrier* permit for the hauling of merchandise for Belknap Hardware Company from Louisville to eastern Kentucky points. The Interstate Commerce Act does contain a restriction against dual operations as both a contract carrier and a common carrier, unless there is an affirmative showing that such operations will be in the public interest. But the Kentucky motor carrier statutes contain no such restriction. Furthermore, the chief danger from such dual operations—that the holder of the two permits may undercut the competing common carriers by charging reduced rates for contract carriage—does not exist in Kentucky because our statute, KRS 281.675, requires contract carriers to charge rates comparable to those of common carriers. So the contention that unlawful dual operations would be permitted is not sustainable.

■ It is next contended that the evidence does not support the D.M.T. finding that *Combs Motor Freight is financially fit.* This argument is predicated on the fact that the balance sheet of the new corporation lists equipment at estimated market value instead of at its depreciated book value. It appears that the equipment, when owned by Paul Combs individually, had been depreciated around 80 percent for income tax purposes. We are not aware of any rule that would require the depreciated value to be used exclusively in determining the net worth of the corporation for the purpose of evaluating its fitness to carry on satisfactory operations (as distinguished from income tax purposes). Our views with regard to the financial fitness of Combs Motor Freight are substantially the same as hereinbefore expressed concerning the financial fitness of Hazard Express. Paul Combs, individually, had carried on successful operations for many years as a contract carrier, and for two years as a common carrier. In essence he would be continuing operations under the new corporate structure. His credit was sufficient to obtain adequate financing for the corporation. We

think there was a sufficient showing of financial fitness.

■ An attack is made on the finding of general fitness of Combs Motor Freight, because of evidence that Combs, individually, had not filed annual reports with D.M.T. during the period he operated under the certificate that was granted in 1957 (and revoked pursuant to the mandate of this court in 1960); that he had continued for a few days after that certificate was revoked to make deliveries as a common carrier; and on one or two occasions, while holding only a contract carrier permit, he had transported goods not authorized by the permit. We think it is sufficient to say that none of the foregoing conduct evidenced a policy or pattern of evasion of the law. The failure to file reports may be attributed to simple neglect or oversight. The deliveries after the certificate was cancelled can be excused as part of a winding-up operation. The instances of improper carriage were minor. We conclude that the finding of general fitness had sufficient support in the evidence.

■ It is contended that the evidence does not support the finding that the existing service of Hazard Express, between Lexington and eastern Kentucky, is so inadequate as to warrant granting a certificate to Combs Motor Freight for service of the same territory. In our opinion there was ample proof of inadequacy of the service of Hazard Express. The testimony of around 70 witnesses showed that on a substantial percentage of shipments from Lexington the delivery was made some three to eight days after shipment; that the service was not of dependable regularity; and that the handling of damage claims was unsatisfactory. Some of the testimony was not supported by documentary proof but we do not conceive that unsatisfactory service can be proved only by the introduction of specific freight bills.

■ Hazard Express argues that the volume of business to the eastern Kentucky

points is not sufficient to support two carriers. However, D.M.T. found, and we think justifiably, that advancement of the economy of eastern Kentucky, toward which considerable efforts are being devoted these days, would be assisted by expansion of the motor transportation service, which in turn would provide more carrier revenues. In any event, the possibility that the new carrier will not be able to succeed, or that the existing carrier will be forced out of business, or that both will go broke, we think is not a justification for forever perpetuating an existing condition of substantially inadequate service. Certainly the appellants would not contend that the only other available remedy—*revocation* of the certificate of Hazard Express—should be invoked.

It is our conclusion that the order granting the certificate to Combs Motor Freight is sustained by the evidence and is valid.

The appellants make two contentions concerning procedure. One is that Combs Motor Freight, not being the holder of any existing certificate, had no standing to protest the application of Hazard Express, and should not have been recognized by D.M.T. as a protestant. The statute, KRS 281.625, provides that notice of an application may be given by D.M.T. to any person who, in the opinion of D.M.T., "may be interested in or affected by the granting of the application", and that "[a]ny person having interest in the subject matter" may file a protest. It is our opinion that Combs Motor Freight, as a competing applicant for the same certificate sought by Hazard Express, was entitled to be heard as a protestant.

The second contention is that D.M.T. violated its own procedural rules by *deciding* both applications in the same order, instead of ruling on the Hazard Express application first (it having been filed first). The rules provide only that the *hearings* on an application shall not be consolidated with hearings on a later application for the same certificate if the later application is filed after the issuance of hearing notices on the first application. There was no violation of that rule.

The judgments are affirmed.